NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL
RIGHTS AS TO K.H.

No. 1 CA-JV 26-0001

FILED 07-06-2026

Appeal from the Superior Court in Maricopa County
No. JD42811
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ingeet P. Pandya
*Counsel for Appellee Department of Child Safety*

Maricopa County Public Advocate's Office, Mesa
By Seth Draper
*Counsel for Appellant Father*

Maricopa County Legal Advocate's Office, Phoenix
By Amanda L. Adams
*Counsel for child K.H.*

---

## MEMORANDUM DECISION

Presiding Judge David B. Gass[1] delivered the decision of the court, in which Judge Anni Hill Foster and Judge D. Andrew Gaona joined.

---

**G A S S**, Judge:

¶1   Father appeals the superior court's order terminating his parental rights to the child (born in 2024). Mother is not a party to this appeal. Because reasonable evidence supports the order, the court affirms.

### FACTUAL AND PROCEDURAL HISTORY

¶2   On appeal, the court views the facts in the light most favorable to upholding the superior court's findings. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 32 (2023).

¶3   Father has a total of 10 children. Father and mother have 3 children together: a 4-year-old, a 3-year-old, and the child (who is 2 years old). Father's rights to the 4-year-old and the 3-year-old were terminated. Father appealed that termination, and the court affirmed in January 26, 2026. *See In re H.H.*, No. 1 CA-JV25-0118, 2026 WL 208403 (Ariz. App. Jan. 26, 2026) (mem. dec.). Father's appeal here thus involves only the child.

I.  **Before the child was born, the Department removed the 2 other children from father's care.**

¶4   Following the births of the 2 other children, the Department took custody and petitioned for dependency, alleging neglect. The 2 other children both tested positive for substances shortly after their births. The 3-year-old child was born prematurely with special needs requiring several

---

[1] Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

months of hospitalization. The superior court ultimately found the 2 other children dependent.

¶5            During the dependency, the Department provided father with various services and submitted findings under the Adoption and Safe Families Act (ASFA). Before the child was born, father made his sole objection to ASFA findings. After that, father engaged in counseling and completed some drug testing. But father missed other tests and consistently tested positive for marijuana despite knowing his marijuana use—and how it affected his ability to parent—concerned the Department. He also tested positive for methamphetamines during a hair follicle test and failed to complete substance abuse treatment. To his credit, father attended some visits with the children. But he missed many, and of the ones he attended, he cut many short. Though the Department repeatedly asked father to attend appointments for the 3-year-old child with special needs, he attended just 1 throughout the dependency.

¶6            The Department also twice referred father for a psychological evaluation despite father skipping several appointments. In December 2023, father finally completed a psychological evaluation, which highlighted several issues. Father shared his criminal history, including time spent in jail for physical violence with former partners and others. Father shared he diagnosed himself with lung cancer, and said he used marijuana daily to treat it. But father never provided any records supporting his alleged stage-3-lung-cancer diagnosis.

¶7            Over 1.5 years after petitioning for dependency, the Department moved to terminate father's parental rights. Though father acknowledged his substance use throughout the dependency, he repeatedly missed drug tests. Father conceded the Department referred him for substance abuse treatment. Father completed intake appointments, but never engaged in further services.

¶8            Based on the evidence, the superior court found by clear and convincing evidence father was "not an appropriate caregiver and will not be for the foreseeable future." The superior court also found termination was in the 2 other children's best interests by a preponderance of the evidence because they had bonded to their foster family. Termination would allow the 2 other children to be adopted together into a supportive and stable environment. The superior court thus terminated father's parental rights to the 2 other children.

## II.     After the child was born, the conditions remained the same.

**¶9**        The child was born on February 18, 2024, while the dependency for the 2 other children was pending. Because father had not addressed the welfare risks raised in the dependency for the 2 other children, the Department took the child into temporary custody and filed a dependency petition. The superior court agreed, found the child dependent as to father when father failed to appear for the pre-trial conference, and adopted a case plan of family reunification.

**¶10**        After the child was born, the Department referred father for services, including Nurturing Parenting Program, Family Connections, Terros, PSI, Supervised Visitation Only, and a psychological evaluation. But father remained disengaged. Though the Department made transportation accommodations for each appointment, father missed "almost every appointment [he was] scheduled for."

**¶11**        Father's mental health and parenting skills continued to pose serious concerns. Father "display[ed] a continuing pattern of unpredictable and dangerous behavior" when he "threatened and attacked" mother. The Department referred father for individual counseling, but father never engaged with it. And La Frontera (his self-referral for substance abuse treatment) discharged father from counseling because he failed to engage in services after the intake assessment.

**¶12**        The Department thus moved to terminate father's parent-child relationship with the child because nothing had changed. After the Department moved to terminate, the Department did not make any new referrals, and father did not take any new actions. The Department argued father made "incredibly little progress towards reunification" and failed to engage in the wide variety of referred services listed above. Father still had not secured adequate housing and was "living illegally in a public park." Even after the Department offered 2 community housing options, father chose to remain homeless.

**¶13**        Father's behavior remained unchanged throughout 2025. Father still smoked marijuana, refused to sign a release of information, and never provided any documentation about his alleged stage-3-lung-cancer diagnosis. Father also struggled to maintain a stable income, though he claimed to "make several thousand dollars per week." When the Department's child safety specialist tried to verify his claim, father did not cooperate and replied:

> In my opinion my finances are only for the judge. It truthfully isn't any of your business. How I make my money and what I spend it on. You['re] not entitled to [any] of it. It's not like I had sex with you and you had my children. So [none] of my financials are your concern.

**¶14** The superior court held a contested termination adjudication 4 months after the Department moved to terminate. The superior court found the Department proved 2 grounds by clear and convincing evidence: (1) father could not remedy the neglect which caused the Department to remove the child from his care after 15 months; and (2) the superior court terminated father's parental rights on the same grounds in a prior proceeding. The superior court also found by a preponderance of the evidence the termination was in the child's best interests.

**¶15** Father timely appealed. The court has jurisdiction under Article VI, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235.A, 12-2101.A.1, and Rule 603(a), Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶16** Father argues the superior court abused its discretion: (1) when it found the Department made diligent efforts to reunify father with the child; and (2) when it found father's rights already had been terminated on the same grounds. Because the court resolves the matter based on the Department's diligent efforts, the court will not address father's second issue on the prior termination ground.

**¶17** The court reviews a termination order for abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). Abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *Williams v. Williams*, 166 Ariz. 260, 265 (App. 1990).

**¶18** "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, [and] judge the credibility of witnesses." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). The court will not reweigh the evidence or redetermine the credibility of witnesses on appeal. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151–52 ¶¶ 19–20 (2018). Rather, the court will affirm a termination order if reasonable evidence supports the superior

court's factual findings, and its legal conclusions are not clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31.

¶19        Under A.R.S. § 8-533.B.8(c), the superior court may terminate parental rights when (1) the child has been in a court-ordered out-of-home placement for a cumulative total period of 15 months or longer; (2) the parent has been unable to remedy the circumstances causing the child to be in an out-of-home placement; (3) there is a substantial likelihood the parent will not be capable of exercising proper and effective parental care and control in the near future; and (4) the Department has made a diligent effort to provide the parent with appropriate reunification services. To terminate rights under the 15-month out-of-home placement ground, the Department must prove by clear and convincing evidence it made "a diligent effort to provide appropriate reunification services." A.R.S. § 8-533.B.8; *In re J.C.*, 259 Ariz. 60, 69 ¶ 39 (App. 2024) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 190 ¶ 25 (App. 1999)).

I.        **The superior court did not abuse its discretion in finding the Department made diligent efforts to reunify father.**

¶20        Father argues the Department failed to provide him with services intended to effect reunification. Specifically, father argues the Department should have referred him for substance-abuse treatment and a psychiatric evaluation after the Department moved to terminate his rights to the child. The Department argues the superior court did not abuse its discretion when it found the Department made diligent efforts to provide appropriate reunification services and did not need to re-refer father based on his history of non-compliance. The Department is correct.

¶21        The Department must make diligent efforts to preserve the family relationship. *See Mary Ellen C.*, 193 Ariz. at 192 ¶ 33. The Department "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94 ¶ 20 (App. 2009). But the Department need not provide every conceivable service or "undertake rehabilitative measures that are futile." *Mary Ellen C.*, 193 Ariz. at 192 ¶ 34. And the Department is not obligated to leave the window of opportunity for remediation open indefinitely. *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶22        From 2023 to the time of the termination adjudication here, father was inconsistent in testing and ultimately completed just about 60% of scheduled urinalysis tests. And the times he tested, he either tested

positive for marijuana, or the test was inconclusive. True, marijuana is a legal drug. But father told the Department, despite daily use of the mind-altering drug, he had no action plan to care for the child when under the influence. Father, after several years, could not develop an understanding of how being under the influence affects his ability to parent effectively. The Department was especially concerned about father's lack of willingness to mitigate the safety concerns revolving around his marijuana usage, stating the child needs "a safe, sober, and stable caregiver."

¶23 In response, the Department referred father to 2 providers for substance abuse counseling (including Terros), and father self-referred to 1 provider. After father threatened to sue Terros, he received mental health services through his self-referral to La Frontera. When La Frontera discharged father for his lack of engagement, the Department referred him yet again to another provider. In sum, the Department provided services for over 20 months after the child was placed in temporary custody, 5 months longer than the 15-month threshold. The specialist concluded "it does not appear that [father] is able or willing to make the behavior changes necessary." The superior court thus did not abuse its discretion when it chose not to order the Department to re-refer him yet again for substance-abuse treatment.

¶24 Father's December 2023 psychological evaluation said "[i]t is unlikely that available services and interventions will benefit [father] to the degree that he could be entrusted with the care of a child." The evaluation also said it would be unlikely "that additional mental health and parenting services arranged by DCS will have a beneficial impact." The psychological evaluation further deemed an additional referral for a psychiatric evaluation unbeneficial "unless [father] is motivated to seek psychiatric services and comply with any recommended treatment." The August 2025 report made note of father's disregard for his psychiatric care and the related prescribed medications. Over a year after the birth of the child, father remained disengaged, making a psychiatric-evaluation referral unwarranted.

¶25 Further, father never objected to ASFA findings during the child's dependency and termination. The superior court ordered the Department to submit ASFA findings 6 different times. True enough, before the child was born, father objected once in September 2023. He claimed the Department did not make diligent efforts to provide him with behavioral health treatment, and the superior court agreed. After that time, the superior court consistently made ASFA findings with no objection from father. Ultimately, the superior court found the Department referred father

or provided him over 10 different services. The specialist testified the Department "provided every service in the book for a father to make the changes." Father thus consistently recognized the Department had made diligent efforts since 2023.

**¶26** At bottom, reasonable evidence shows the Department made diligent efforts to provide reunification services to father after the birth of the child. Father demonstrated a pattern of unreliability despite the Department's diligence. To the extent the Department's efforts were to no avail, the fault lies with father. The record thus supports the superior court's finding that further efforts by the Department would have been futile. As a final point, the court ruled the Department made diligent efforts to reunify father with the 2 other children and that ruling has become final. *See In re H.H.*, 2026 WL 208403, at *1. Because the court may affirm on the 15-month out-of-home ground, the court need not address the prior termination ground. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49 ¶ 14 (App. 2004).

**CONCLUSION**

**¶27** The court affirms.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

8